UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | 2:18-CR-00017-DCLC-CRW |
| v. | ) ) | |
| DAVID DUNLAP, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant David Dunlap's Motions for a Reduction of Sentence [Docs. 1871, 1873] pursuant to 18 U.S.C. § 3582(c)(1)(A). Federal Defender Services ("FDS") filed a Notice indicating it did not intend to file any pleadings at this time [Doc. 1877]. The United States (the "Government") responded in opposition to Defendant's Motion [Doc. 1878] and Defendant replied [Doc. 1884]. This matter is now ripe for resolution. For the reasons stated herein, Defendant's Motions [Docs. 1871, 1873] are **DENIED**.[1]

### I.   BACKGROUND

On September 19, 2019, Defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) [Docs. 1047, 1235]. Although the United States Sentencing Guidelines provided a guideline range of 100 to 125 months, the mandatory minimum sentence for Defendant's offense of conviction limited that range to 120 to 125 months [Doc. 1693, ¶ 110]. On June 17, 2021, this Court sentenced Defendant to the mandatory minimum 120 months'

---

[1]   The two motions are identical to one another [*see* Docs. 1871, 1873], except that the second motion omits an exhibit included with the first. Accordingly, though the Court discusses only the first motion below, the second is due to be denied for the same reasons.

1

imprisonment and a five-year term of supervised release [Doc. 1764; Doc. 1765, pgs. 2–3]. His projected release date is December 11, 2025 [Doc. 1878-1, pg. 2]. On February 17, 2023, Defendant submitted a request for compassionate release to FCI Butner [Doc. 1871-1, pg. 2]. On April 5, 2023, Defendant filed the Motion for Compassionate Release that is currently before the Court [Doc. 1871]. Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and asserts that his family circumstances, a purported sentencing disparity, and confinement conditions constitute extraordinary and compelling reasons for release [*Id.*, pgs. 2, 4, 6, 9]. The United States opposes Defendant's motion and argues that he does not meet the requirements for compassionate release [Doc. 1878].

## II. LEGAL STANDARD

"A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, amended 18 U.S.C. § 3582(c)(1)(A) to provide district courts with the authority to modify a defendant's sentence and grant compassionate release

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission…

18 U.S.C. § 3582(c)(1)(A).[2]

---

[2] The statute includes a separate basis for compassionate release which requires, among other prerequisites, that "the defendant is at least 70 years of age" and "has served at least 30 years in prison," but this provision does not apply to Defendant, as he is 53 years old and has served less than six years in the BOP [*See* Doc. 1878-1, pg. 1]; 18 U.S.C. § 3582(c)(1)(A)(ii).

2

Pursuant to this amendment, district courts may consider motions for compassionate release filed either by the Bureau of Prisons ("BOP") or by a defendant after the defendant has "exhaust[ed] the BOP's administrative process" or "thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of the administrative remedies is a "mandatory condition" to defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim-processing rule," it may be waived or forfeited by the Government. *Id*. at 833-34.

In addition to the procedural requirements, Section 3582(c)(1)(A) "has identified three substantive requirements for granting relief." *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). The Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) consider the factors in Section 3553(a), to the extent they apply. *Jones*, 980 F.3d at 1106 (quoting *Ruffin*, 978 F.3d at 1003-06). A motion for compassionate release may be denied when any of the three substantive requirements are not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Additionally, the Sixth Circuit has clarified that when the defendant, rather than the BOP, files a motion for compassionate release, the Court "may skip step two of the [Section] 3582(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement in [U.S.S.G.] § 1B1.13." *Jones*, 980 F.3d at 1111.

### III.   ANALYSIS

Here, Dunlap has exhausted his remedies. He requested compassionate release from the BOP on February 17, 2023 [Doc. 1871-1, pg. 2], and filed the present motion more than thirty days

3

later on April 5, 2023 [Doc 1871]. Accordingly, the Court will address the substantive requirements for compassionate release.

### A. Extraordinary and Compelling Reasons

Defendant argues his family circumstances constitute an extraordinary and compelling reason for release [Doc. 1871, pg. 2]. He states his father has dementia and Defendant wishes to care for him [*Id.*]. Although not binding on the Court, the Sentencing Commission's policy statements are helpful guideposts. *See United States v. McIver*, No. 20-5859, 2021 WL 267910, at *2 (6th Cir. Jan. 20, 2021) (remanding for the district court to exercise its "full discretion" where the lower court relied solely on the defendant's failure to meet the self-care policy statement in denying compassionate release). The relevant application note states extraordinary and compelling reasons include "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. 1(C)(ii). Some courts have interpreted this policy statement to encompass defendants who are the only available caregiver for an ailing parent. *See, e.g.*, *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019); *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020).

Here, Defendant contends he is the only available caregiver because his brother is unwilling to care for his father due to a "rivalry" between them [Doc. 1871, pg. 2]. He notes his three children "live on their own" and "cannot live with [Defendant's] father" [Doc. 1871, pg. 3]. Defendant's wife lives in a halfway house, he explains, and cannot afford independent housing [*Id.*].

Nonetheless, as the Government points out, Defendant's motion omits documentation of the severity of his father's condition [*See* Doc. 1878, pg. 3]. Defendant asserts his father "needs

4

someone to live with him full time," [Doc. 1871, pg. 2], but does not explain how his father is incapacitated. Affidavits of family members note he has trouble remembering to pay his bills, but also has had help setting up automatic payment [*See* Doc. 1871, pgs. 4, 6]. An affidavit also recounts an incident in which Defendant's father walked to a store he had sold some time ago and demanded the storekeeper "get the hell out of his store" [Doc. 1871, pg. 6]. But the motion and affidavits do not explain whether Defendant's father is incapable of caring for himself, nor do they indicate what kind of full time care he needs. Because Defendant fails to show his father is incapacitated, his family circumstances do not constitute an extraordinary and compelling reason for release.

Defendant next contends his sentence is disparately high for three reasons. First, he claims that although his guideline range was 70 to 100 months, the statutory minimum required the Court to sentence him to 120 months [Doc. 1871, pg. 4]. But in fact, the Court calculated Defendant's guideline range to be 100 to 125 months, [*see* Doc. 1693, ¶ 110], and his mandatory-minimum sentence was within that guideline range. "Congress established the guidelines system as the mechanism to "bring about greater fairness in sentencing through increased uniformity." *United States v. Kirchhof*, 505 F.3d 409, 416 (6th Cir. 2007). "[W]hen a district court correctly [calculates the guideline range], it has necessarily taken into account the need to avoid unwarranted sentence disparities, viewed nationally." *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (quoting *United States v. Houston*, 529 F.3d 743, 754 (6th Cir. 2008)) (internal quotation marks omitted). Here, although the 120-month statutory minimum truncated Defendant's guideline range, the Court still sentenced him within that range. His within-guidelines sentence therefore accounted for the potential for sentencing disparities.

5

Second, Defendant argues his sentence was excessive based on the relevant statute and guideline's disparate treatment of "actual" or pure methamphetamine versus a methamphetamine mixture [Doc. 1871, pgs. 4–5]; *see* 21 U.S.C. § 841(b)(1)(A)(viii); USSG § 2D1.1(c)(5). He urges the Court to reduce his sentence based on a policy judgment that "there is no empirical basis" for treating actual methamphetamine more severely [*Id.*, pg. 5]. But the statute obliged the Court to impose at least the mandatory minimum sentence. In any event, Defendant fails to show that the disparity in treatment between actual methamphetamine and a mixture containing methamphetamine amounts to an extraordinary and compelling reason in this case.

Third, Defendant argues his sentence was above the national average sentence for drug trafficking offenses [Doc. 1871, pg. 5]. But Defendant pleaded to an agreement holding him responsible for at least 50 grams but less than 150 grams of actual methamphetamine [Doc. 1047, ¶ 4(g)]. As explained, the Court was not at liberty to deviate below the mandatory minimum associated with that amount. He fails to show the length of his sentence justifies release.

Defendant next argues that conditions of confinement occasioned by the COVID-19 pandemic support release. He states "the BOP instituted a nationwide lock-down in attempt to mitigate risks to prisoners" [Doc. 1871, pg. 6]. But "to the extent that Defendant's complaints do relate to quarantine measures taken by BOP in response to the COVID-19 pandemic …, such measures implemented to prevent the spread of COVID-19 in the prison system are to be encouraged, not deterred." *United States v. Daniels*, No. 3:19-CR-00204, 2022 WL 164543, at *6 (M.D. Tenn. Jan. 18, 2022).

Defendant notes inmates generally feared contracting the virus and criticizes the BOP for "not disclosing cases, making infected inmates cell with non-infected inmates, talk of mass testing, leaving the orderlies out the entire time so they could spread it, etc." [Doc. 1871, pg. 7]. Defendant

6

cites *United States v. Hatcher*, 18 Cr. 454-10 (KPF), 2021 WL 1535310 (S.D.N.Y. Apr. 19, 2021), where the court noted, "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release." *Id.* at *3. And indeed, in none of the cases cited by Defendant were pandemic conditions of confinement the sole factor favoring immediate release. *See Hatcher*, 2021 WL 1535310, at *4 (releasing defendant more than halfway through a 52-month sentence who "was unable to participate in mental health care, drug abuse treatment, and other important services that the Court envisioned …" when sentencing her); *United States v. Dones*, No. 3:18CR00246(JBA), 2021 WL 6063238, at *3 (D. Conn. Dec. 22, 2021) (releasing Defendant with a "litany of serious health complications" at least one of which put him at heightened risk from COVID-19); *United States v. Brown*, 539 F. Supp. 3d 489, 503 (W.D. Pa. 2021) (releasing a defendant approximately three weeks before eligibility for home confinement and three months before the end of her custodial sentence because "the short remaining period of time is essentially immaterial," and because defendant had "serious medical conditions"); *United States v. Newell*, No. 1:13-CR-165-1, 2021 WL 3269650, at *1 (M.D.N.C. July 30, 2021) (releasing defendants where BOP facility "made decisions in the fall of 2020 that allowed the virus to spread throughout the prison" while cases fell at other facilities and defendants' "personal experiences … [went] well beyond the facts shown in compassionate release motions the Court routinely sees"); *United States v. Walker*, No. CR16331DWFLIB, 2021 WL 1986111, at *3 (D. Minn. May 18, 2021) (releasing defendant whose obesity and smoking history aggravated COVID-19 risk and who was unable to be vaccinated); *United States v. Rodriguez*, No. 19-CR-1962-L, 2021 WL 1400855, at *3 (S.D. Cal. Apr. 14, 2021) (releasing defendant where it was "undisputed that Defendant's severe obesity constitutes an 'extraordinary and compelling reason'"); *United States v. Nolan*, Case No. 1:14-cr-00214-9, 2022

7

U.S. Dist. LEXIS 204518, at *5 (N.D. Ohio Nov. 9, 2022) (releasing defendant in "ailing vascular health"). Only one case granted a ten-month sentence reduction due to "the severity of the conditions of confinement" during the pandemic. *United States v. Lora*, No. 16 CR. 44-5 (KPF), 2022 WL 1055749, at *6 (S.D.N.Y. Apr. 8, 2022). The court is unpersuaded such a reduction is appropriate in Defendant's case. Standing alone, pandemic confinement conditions "cannot be considered an 'extraordinary' basis to grant compassionate release … because every inmate serving a term of incarceration during this pandemic could make a similar argument." *United States v. Waldon*, No. 1:18-CR-123, 2021 WL 3617102, at *3 (S.D. Ohio Aug. 16, 2021).

Defendant complains of conditions specific to FCI Butner [Doc. 1871, pgs. 9–10]. The proper remedy for such complaints is a civil lawsuit under 42 U.S.C. § 1983 in the federal judicial district where Defendant is incarcerated. *See, e.g.*, *United States v. Phillips*, No. 2:14-CR-00104-3-JRG, 2021 WL 5070123, at *2 (E.D. Tenn. Nov. 1, 2021); *United States v. Guzman*, No. 3:10-CR-161-TAV-DCP, 2021 WL 5217624, at *6 (E.D. Tenn. Nov. 9, 2021) ("To the extent that defendant argues that the Bureau of Prisons is violating her rights by failing to pro[vide] adequate medical treatment, … such claims should be addressed through 42 U.S.C. § 1983 or another appropriate civil remedy, not through a motion for compassionate release.").

Defendant argues the Court should consider his purported rehabilitation, [Doc. 1871, pg. 12], but Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 944(t). Further, rehabilitation is "expected of federal prisoners," and is therefore neither extraordinary nor compelling. *Hymes*, 19 F.4th at 934. Similarly, while Defendant is to be commended for his lack of a disciplinary record, [*see* Doc. 1871, pg. 12], prisoners are expected to abide by the rules. These factors do not present extraordinary and compelling reasons.

## B. Applicable § 3553(a) Factors

In any event, the 18 U.S.C. § 3553(a) factors do not support release. Defendant pleaded guilty to a conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, a serious offense [Doc. 1047]. Defendant's criminal history is extensive and includes multiple assaults [Doc. 1693, ¶¶ 37, 47, 51], one aggravated assault [*Id.*, ¶ 55], reckless endangerment [*Id.*, ¶ 38], evading arrest [*Id.*, ¶ 56], multiple DUIs [*Id.*, ¶¶ 41, 48], simple possession [*Id.*, ¶¶ 44, 58], and driving without a valid license [*Id.*, ¶¶ 36, 43]. And Defendant committed the instant offense while under an existing criminal justice sentence [*Id.*, ¶ 60]. His criminal history indicates a lack of respect for the law and reveals a need for deterrence and to protect the public from future crimes Defendant might commit. Releasing him now would fail to achieve these goals of sentencing and depreciate the seriousness of his offense.

## IV. CONCLUSION

Accordingly, Defendant's Motions for a Reduction of Sentence [Docs. 1871, 1873] are **DENIED**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge